# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBBIE HEVERLING and NATHAN HESS,** | : CIVIL ACTION NO. 1:17-CV-1433 |
| | : |
| | : **(Chief Judge Conner)** |
| **Plaintiffs** | : |
| | : |
| v. | : |
| | : |
| **MCNEIL CONSUMER PHARMACEUTICALS, CO.,** | : |
| | : |
| **Defendant** | : |

## MEMORANDUM

Plaintiffs Robbie Heverling ("Heverling") and Nathan Hess ("Hess") commenced this action against defendant McNeil Consumer Pharmaceuticals, Co. ("McNeil")[1] asserting claims for retaliation in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. AND CONS. STAT. ANN. § 951 *et. seq.*, and Pennsylvania common law wrongful termination. (Doc. 1-1). McNeil moves to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 3). The court will grant the motion.

## I. Factual Background & Procedural History

McNeil is a New Jersey corporation that manufactures myriad pharmaceutical drugs, including drugs designed to treat gastrointestinal illnesses.

---

[1] McNeil asserts that plaintiffs erroneously designated each of its two Pennsylvania locations—Fort Washington and Lancaster—as separate defendants. McNeil clarifies that it is a single defendant incorporated in New Jersey, with two Pennsylvania locations, operating as "McNeil Consumer Healthcare Division of Johnson & Johnson Consumer Inc." (See Doc. 1 ¶¶ 10-13; Doc. 4 at 1 n.1). Plaintiffs do not dispute this. (See Doc. 10-1 at 1). For simplicity, the court will refer to "both defendants" as McNeil.

(Doc. 1-1 ¶ 12). Plaintiffs are two former employees who worked as processing associates in McNeil's Lancaster, Pennsylvania plant. (Id. ¶¶ 11-12). McNeil is subject to a consent decree issued by the Food and Drug Administration ("FDA") which requires McNeil to achieve certain quality control standards and maintain particular manufacturing processes. (Id. ¶ 13). McNeil hired Heverling on December 5, 2005. (Id. ¶ 9). Hess began working at McNeil on September 22, 2014 through a temp agency and was converted to a "full status employee" on February 27, 2015. (Id. ¶ 10).

Beginning in January 2015, plaintiffs raised concerns about violations of FDA quality control standards with their immediate supervisor, Dan Kitch ("Kitch"). (Id. ¶¶ 16, 23). Plaintiffs aver that McNeil's management allowed employees to use equipment which was neither properly cleaned nor sterilized pursuant to the FDA Good Manufacturing Practices. (Id. ¶ 16). In addition to reporting contaminated equipment, plaintiffs informed Kitch that McNeil may not be in compliance with record keeping requirements under the FDA Good Manufacturing Processes and other regulations. (Id. ¶¶ 16-17, 23). According to the complaint, Kitch did not address these issues, and he purportedly compelled plaintiffs to approve batch integrity and quality control reports despite contamination concerns. (Id. ¶ 18). Plaintiffs subsequently informed both the first shift supervisor and second shift supervisor about the ongoing issues at the plant and Kitch's failure to address them. (Id. ¶¶ 22, 24-25, 26-28, 29-30). In May 2015, plaintiffs reported to their supervisors and the technician that a malfunction in one of the plant's machines had caused a batch of contaminated product to leave the facility. (Id. ¶¶ 31-32). In response, the

technician allegedly advised plaintiffs to "keep [their] mouths shut about this . . . ." (Id. ¶ 32).

After plaintiffs reported the contamination, McNeil allegedly responded with a plant-wide harassment investigation. (Id. ¶¶ 33-34). McNeil interviewed plaintiffs and asked whether they had ever "participated in sexually tinged ridicule of another male employee." (Id. ¶ 35). Hess responded that he had never teased another male employee. (Id. ¶ 36). Heverling answered that he had "engaged in very mild humorous banter with other male employees," but never targeted or teased any single employee. (Id. ¶ 37). To put the banter in context, Heverling and Hess reported that they too had been subjected to homophobic slurs and teasing. (Id. ¶ 39). On June 25, 2015, McNeil terminated the employment of both Heverling and Hess. (Id. ¶ 40). Plaintiffs allege that McNeil terminated them because they reported contaminated batches—violations of the FDA consent decree and Good Manufacturing Practices—as well as their prevalent use of sexual and homophobic slurs. (Id. ¶¶ 40-41).

Plaintiffs commenced their first action against McNeil on April 11, 2016. Heverling v. McNeil Consumer Pharm., Co. ("Heverling I"), No. 1:16-CV-600, 2017 WL 714047, at *2 (M.D. Pa. Feb. 23, 2017).[2] Therein, plaintiffs asserted four claims, to wit: (1) hostile work environment and retaliation in violation of Title VII (Counts I, III), (2) retaliation in violation of the PHRA (Count II), and (3) wrongful termination in violation of Pennsylvania common law (Count IV). Id. The court

---

[2] When pertinent to our analysis, the court will cite to the complaint in Heverling I as "Heverling I Compl."

3

dismissed the complaint on February 23, 2017 pursuant to Federal Rule of Civil Procedure 12(b)(6). Id. at *5. The court granted plaintiffs leave to amend Title VII and PHRA retaliation claims and the wrongful termination claim within twenty days. Id. The court dismissed the Title VII hostile work environment claim with prejudice. Id. Plaintiffs did not amend their complaint in Heverling I, (see Doc. 10-1 at 8-9), and the case was terminated, see Heverling I, No. 1:16-CV-600 (M.D. Pa. Mar. 20, 2017).

On June 13, 2017, plaintiffs commenced the instant action against McNeil in the Court of Common Pleas of Lancaster County, Pennsylvania. (Doc. 1-1). McNeil removed the case to federal court on diversity grounds. (Doc. 1). McNeil moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 3). The motion is fully briefed and ripe for disposition.[3]

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most

---

[3] On April 28, 2016, the Supreme Court adopted changes to the Federal Rules of Civil Procedure. In pertinent part, the Court amended Rule 6(d) to remove "electronic means" as a mode of service triggering an additional three days to act when a responsive period commences upon service. See FED. R. CIV. P. 6, advisory committee's note to 2016 amendment. The amendments took effect on December 1, 2016. Plaintiffs filed their brief in opposition on August 28, 2017, three days after the responsive deadline under Rule 6(d) as amended. Because the recent amendment altered a longstanding practice, the court will exercise its discretion to consider plaintiffs' *nunc pro tunc* brief as timely filed.

4

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[]

5

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Courts need not grant leave to amend *sua sponte* in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 252-53, but leave is broadly encouraged "when justice so requires." FED. R. CIV. P. 15(a)(2).

### III. Discussion

McNeil argues that plaintiffs' claims *sub judice* are precluded because the judgment in Heverling I was final and on the merits. Plaintiffs contend that Heverling I was not adjudicated on the merits and that their instant complaint is sufficiently different to avoid preclusion.

A district court exercising diversity jurisdiction applies the claim preclusion law of the state in which it sits. Semtek In'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508-09 (2001). Claim preclusion, or *res judicata*, is an affirmative defense which may form the basis of a dismissal if it is "apparent on the face of the complaint." Weinberg v. Kaplan, LLC, 699 F. App'x. 118, 120 n.3 (3d Cir. 2017) (nonprecedential) (citing Rycoline Prods. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997)); accord

Jones v. Bock, 549 U.S. 199, 215 (2007).[4]  A court may consider matters of public record when the defense of claim preclusion is raised in a motion to dismiss. Toscano v. Conn. Gen. Life Ins. Co., 288 F. App'x. 36, 38 (3d Cir. 2008) (nonprecedential).

A party asserting the defense of *res judicata* must establish the following elements: "(1) a final judgement on the merits in a prior suit involving, (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action."  Hoffman v. Nordic Naturals, Inc., 837 F.3d 272, 279 (3d Cir. 2016) (quoting *In re* Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008)); Weinberg, 699 F. App'x. at 120. Courts should not apply this test mechanically, but with the central purpose of the doctrine in mind, "to require a plaintiff to present all claims arising out [of] the same occurrence in a single suit."  Sheridan v. NGK Metals Corp., 609 F.3d 239, 260 (3d Cir. 2010) (quoting Churchill v. Star Enters., 183 F.3d 184, 194 (3d Cir. 1999)). For a claim to be precluded, litigation does not have to occur; the party must have had full and fair *opportunity* to litigate the claim.  See Whole Woman's Health v. Hellerstedt, 136 S. Ct. 2292, 2331 (2016) (citing Montana v. United States, 440 U.S. 147, 153-54 (1979); see also Shah v. United States, 540 F. App'x. 91, 93 (3d Cir. 2013) (nonprecedential).

There is no dispute that the parties in Heverling I and herein are identical. The court will address the remaining claim preclusion elements *seriatim*.

---

[4] The court acknowledges its citations to several nonprecedential opinions of the Court of Appeals for the Third Circuit, but adopts the *ratio decidendi* of these opinions as persuasive on the legal principles which are the subjects of citations.

### A. Judgment on the Merits

An involuntary dismissal is an adjudication on the merits unless the court states otherwise or the dismissal is one for lack of jurisdiction, improper venue, or failure to join a party. FED. R. CIV. P. 41(b). A plaintiff converts a dismissal without prejudice into a final order on the merits by "declar[ing] his intention to stand on his complaint." Hoffman, 837 F.3d at 279 (alteration in original) (quoting Borelli v. City of Reading, 532 F.2d 950, 951-52 (3d Cir. 1976)). Failure to amend a complaint within the time frame allotted by a district court indicates such an intention and renders the district court's order final. Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 31 n.3 (3d Cir. 2011); see also Hoffman, 837 F.3d at 279-80.

The court dismissed plaintiffs' Title VII and PHRA retaliation and state law wrongful termination claims without prejudice and granted leave to amend those claims within twenty days. Heverling I, 2017 WL 714047, at *5. Plaintiffs elected not to file an amended complaint within the prescribed time period.[5] (Doc. 10-1 at

---

[5] Plaintiffs assert that amendment of the Heverling I complaint would have been "futile" because they could not cure the deficiencies in their Title VII claim. (Doc. 10-1 at 8-9). With only state law claims remaining, plaintiffs argue that the court would have lacked jurisdiction and would have been compelled to dismiss their state law claims. Id. at 9. We disagree. Section 1367 of the United States Code provides that a federal court "*may* decline to exercise supplemental jurisdiction," over a claim after all claims over which the court has original jurisdiction are dismissed. 28 U.S.C. § 1367(c)(3) (emphasis added). If all federal claims are dismissed before trial, a court may dismiss the state law claims without prejudice. Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) (quoting United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966)). However, this is a "doctrine of discretion," and dismissal of federal claims does not automatically deprive the court of power to adjudicate remaining state law claims. Gibbs, 383 U.S. at 726; New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1505 (3d Cir. 1996); see also Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009).

8-9). By failing to amend in Heverling I, plaintiffs elected to stand on their complaint. See Hoffman, 837 F.3d at 279. Accordingly, the court's February 23, 2017 order dismissing plaintiffs' PHRA and wrongful termination claims in Heverling I is converted to a final judgment on the merits. See id.; Huertas, 641 F.3d at 31 n.3.

### B. Same Cause of Action

Whether a subsequent suit is based on the same cause of action "turn[s] on the essential similarity of the underlying events giving rise to the various legal claims." Hoffman, 837 F.3d at 279 (quoting Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 277 (3d Cir. 2014)). The following factors guide the court's review: "(1) whether the acts complained of and the demand for relief are the same [], (2) whether the theory of recovery is the same, (3) whether the witnesses and documents necessary at trial are the same [], and (4) whether the material facts alleged are the same." Sheridan v. NGK Metals Corp., 609 F.3d 239, 261 (3d Cir. 2010) (quoting United States v. Athlone Indus., Inc., 746 F.2d 977, 984 (3d Cir. 1984)).

The defense of *res judicata* should not be cast aside "by minor differences of form, parties, or allegations," when such differences exist only to obscure the party's intention to circumvent dismissal. Schuldiner v. Kmart Corp., 450 F. Supp. 2d 605, 609 (E.D. Pa. 2006) (quoting Mintz v. Carlton House Partners, Ltd., 595 A.2d 1240, 1247 (Pa. Super. Ct. 1991)). Asserting a different theory of recovery or requesting different relief is not dispositive. Sheridan, 609 F.3d at 261. The purpose of *res judicata* is "to require a plaintiff to present all claims arising out [of] the same occurrence in a single suit" in order to "avoid piecemeal litigation and

9

conserve judicial resources." Id. at 260 (alteration in original) (quoting Churchill, 183 F.3d at 194 (citation omitted)).

Plaintiffs contend that their complaint has been "revised and changed entirely." (Doc. 10-1 at 9-10). The record demonstrates no such distinction. The complaints in Heverling I and the above-captioned matter are nearly identical. (Compare Doc. 1-1 with Heverling I Compl.). Plaintiffs allege in both complaints that their former employer, McNeil, terminated their employment on June 25, 2015 because plaintiffs reported FDA violations to their supervisors which resulted in a retaliatory sexual harassment investigation. Plaintiffs assert in both complaints that McNeil's actions constituted wrongful termination and clear violations of the PHRA. The only substantive change to the instant complaint is the addition of one paragraph under the wrongful termination claim which cites a Pennsylvania statute. (Doc. 1-1 ¶ 58). This paragraph merely provides public policy justification for plaintiffs' wrongful termination claim.[6] Plaintiffs advance the same factual narrative herein as they did in Heverling I. In sum, the acts complained of and liability theories in Heverling I are the same as those set forth in the present action.

Analysis of the remaining factors leads inexorably to the same conclusion. Plaintiffs seek relief identical to Heverling I. Plaintiffs provide no indication that the witnesses and documents required here differ in any way from those necessary

---

[6] The addition of Pennsylvania public policy under the wrongful termination claim does not distinguish the theory of recovery *sub judice* from that in Heverling I. Assuming *arguendo* that plaintiffs asserted a different theory of recovery, this alone would not be dispositive because the same parties and the same underlying facts are present in this litigation. See Sheridan, 609 F.3d at 261.

in Heverling I.  (See Docs. 4, 10-1, 12).  We find that both cases arise from the same cause of action.  And the material facts alleged *sub judice* are indistinguishable from those alleged in Heverling I.

### IV. Conclusion

For the foregoing reasons, the court will grant McNeil's motion (Doc. 3) to dismiss plaintiffs' complaint.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    March 12, 2018